UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERI KINNEY,

       Plaintiff,

v.                                            Case No. 1:19-cv-604

                                            Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

On September 12, 2014, administrative law judge (ALJ) William G. Reamon denied plaintiff's application for DIB. PageID.41. Plaintiff filed the present application for DIB on October 10, 2014. PageID.41. She alleged a disability onset date of September 13, 2014, which was later amended to April 4, 2015. PageID.41. Plaintiff identified her disabling conditions as a "hip and shoulder problem." PageID.292. Prior to applying for DIB, plaintiff completed one year of college and had past employment as an administrative assistant (customer relations specialist) and material handler. PageID.49, 277, 293. ALJ Donna J. Grit reviewed plaintiff's present claim *de novo* and entered a written decision denying benefits on July 5, 2018. PageID.41-50. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ GRIT'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, ALJ Grit found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of April 4, 2015, through her date last insured of December 31, 2017. PageID.43. At the second step, the ALJ found that through the date last insured, plaintiff had the following severe

3

impairments: left hip osteoarthritis and probable labral tear; degenerative disc disease of the cervical and lumbar spine; and right ankle OS trigonum syndrome. PageID.44. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.44.

>ALJ Grit decided at the fourth step that:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) in that she can lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; stand and walk two hours and sit up to six hours in an eight-hour day; no crawling, crouching, kneeling, or climbing ladders, ropes, or scaffolds; occasionally stoop and climb ramps or stairs; occasionally reach overhead; she has no limitation in her ability to balance; she should have no exposure to unprotected heights; no use of foot pedals; no exposure to dangerous moving machinery; and no exposure to vibration or extremes of cold.

PageID.44. The ALJ also found that through the date last insured, plaintiff was capable of performing her past relevant work as an administrative assistant. PageID.48. This work did not require the performance of work-related activities precluded by her residual functional capacity (RFC). PageID.48-49. Accordingly, ALJ Grit found that plaintiff was not under a disability as defined in the Social Security Act at any time from April 4, 2015 (the amended alleged onset date) through December 31, 2017 (the date last insured). PageID.49.

### III. DISCUSSION

Plaintiff set forth two issues on appeal.

### A. ALJ Grit erroneously applied res judicata in adopting ALJ Reamon's definition of plaintiff's past relevant work

In 2014, ALJ Reamon found that plaintiff had past relevant work as an administrative assistant, which she performed from February 2005 until May 2012. PageID.129. Based on the testimony of vocational expert (VE) Susan J. Rowe, ALJ Reamon found that this

4

work was a skilled job with a Specific Vocational Preparation (SVP) of six (*i.e.*, "[a] job with an SVP six requires that the claimant have over one year of training up to and including two years of training"). PageID.129. VE Rowe testified that the administrative assistant job is performed at the sedentary exertional level per the Dictionary of Occupational Titles (DOT), and that plaintiff would still be able to perform work as an administrative assistant with the nonextional limitations of her RFC. PageID.129.

In the present case, ALJ Grit obtained vocational evidence from a different VE, John A. Petrovich. VE Petrovich offered a different opinion than VE Rowe, referring to the administrative assistant job as a "clerk" position, and stating "I resist categorizing the claimants [sic] past relevant work as a clerk as having an SVP of six and being semi-skilled." PageID.113.[1] This led to the following exchange between ALJ Grit and VE Petrovich:

> [ALJ] Well, we actually can't change what we can't change, so under law, I'm stuck with Administrative Assistant, SVP of six, sedentary. So, that can't be changed. You and I could resist it all we wanted, it wouldn't matter. By law, it's the same. So, I'm just looking for a DOT code and an actual exertion level on those.
>
> [VE] The DOT code for that work is 201.362-030. That work is normally performed at the sedentary exertional level with an SVP level of six. That work is semi-skilled. She describes, in her vocational report, performing that work at a light exertional level.

PageID.113. In addition, VE Petrovich also testified that plaintiff's past relevant work as a forklift operator and material handler was semi-skilled and medium work as normally performed, but plaintiff may have performed it at a heavy exertional level. PageID.112.

Given plaintiff's history, ALJ Grit set out the legal standard which the agency applies to previous adjudications of a claimant's RFC and past relevant work:

> Pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), unless there is new and material evidence documenting a significant change in the claimant's condition,

---

[1] The Court notes that plaintiff's counsel cited the page number in the administrative record (86) rather than the "PageID." number as required by the Court. Counsel is reminded to use the "PageID." number in future Court filings.

> a residual functional capacity and findings pertaining to past relevant work, made in a prior hearing decision by an Administrative Law Judge, are binding on subsequent adjudicators; as long as the subsequent claim arises under the same title of the Social Security Act. <u>As discussed below, there is new and material evidence documenting a significant change in the claimant's condition. However, there is no new and material evidence related to the claimant's work history. Consequently, the residual functional capacity contained in the prior final and binding decision is not adopted, but the finding of the jobs comprising her past relevant work is adopted</u>.

PageID.41 (emphasis added).

ALJ Grit applied this standard in determining whether plaintiff could perform her past relevant work:

> The claimant has past relevant work as an administrative assistant (201.362-030), which is sedentary in exertion and skilled (SVP 6) as classified in the Dictionary of Occupational Titles (DOT), but which she performed at sedentary exertion. As an incidental note, the prior decision did not give the DOT code or the exertional level as the job was actually performed by the claimant in describing the administrative assistant job. This information has been added to the current decision as clarification.
>
> It must also be noted that the prior ALJ decision only addressed the job to which the claimant could return. There was no mention of the other job comprising the claimant's past relevant work. This other job was that of a material handler (921.693-050), which is medium and semiskilled (SVP 3) as classified in the DOT, but which she performed at heavy exertion.
>
> As required by SSR 82-62, both jobs described constitute past relevant work because they consisted of substantial gainful activity, were performed long enough for the claimant to achieve average performance, and were performed within the relevant period.
>
> The DOT does not differentiate between various types of reaching, such as reaching overhead. Rather, it only describes reaching as a single category in the evaluation of jobs in the national economy. Therefore, as her testimony related to the reaching limitation contained in the given residual functional capacity, the vocational expert based her testimony on her professional knowledge and experience. After considering the professional qualifications of the vocational expert and all other evidence of record, I accept this testimony pursuant to SSR 00-4p and find the claimant is able to perform past relevant work as an administrative assistant as generally performed in the economy.

6

PageID.49.  Based on this review, ALJ Grit found that plaintiff was not disabled at Step Four because she could perform her past relevant work as an administrative assistant. *Id.*

Plaintiff contends that ALJ Grit erred "when she held that the previous ALJ's ruling on the nature of plaintiff's past relevant work is binding." Plaintiff's Brief (ECF No. 9, PageID.785).  In support of her claim, plaintiff cites *Early v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018).[2]  "*Earley* stands for the proposition that, when an ALJ evaluates a subsequent application for benefits, covering a distinct period of time, the ALJ can properly consider a previous ALJ's RFC assessment and errs only when she considers the previous RFC a mandatory starting point for the analysis."  *Fish v. Saul*, No. 1:20-cv-0143, 2020 WL 5094872 at *4 (W.D. Mich. Aug. 28, 2020) (citing cases).  Plaintiff's claim fails because it does not involve an RFC determination as addressed in *Early*.  Rather, plaintiff's claim involves a prior ALJ's finding with respect to her past relevant work as an administrative assistant.  Plaintiff's cursory brief does not address the appropriate Acquiesence Ruling, AR 98-3(6), or the decision which formed the basis for the Ruling, *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598, 598-600 (6th Cir. 1990).  Furthermore, plaintiff does not attempt to explain how the *Early* decision applies to a prior determination regarding the nature of a claimant's past relevant work. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is denied.

**B.    The ALJ mishandled the treater's opinions and plaintiff's complaints**[3]

---

[2] The Court notes that the Sixth Circuit decided *Early* on June 27, 2018, before ALJ Grit issued her decision.

[3] While plaintiff also contends that the ALJ "minimized" her complaints, these claims relate to the ALJ's evaluation of Dr. Edgar's opinions and will be addressed as such.

### 1.     ALJ Grit's evaluation of Dr. Edgar's opinions

Plaintiff contends that ALJ Grit improperly evaluated the opinion of Dr. Rick Edgar, her treating neurologist.  Dr. Rick Edgar opined that plaintiff could only occasionally use her upper extremities, must occasionally lie down, and was capable of working only six hours of an eight hour work day schedule.  Plaintiff's Brief at PageID.787; *see* PageID.731.[4]

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record.  *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

ALJ Grit addressed the Dr. Edgar's opinion as follows:

> Rick Edgar, M.D., a treating physician, opined in March 2018 that the claimant could occasionally lift and carry up to 10 pounds. At one time, the claimant could sit for 45 minutes to one hour, could stand 10 minutes, and walk 10 minutes.  In an eight-hour day, the claimant could sit a total of four hours, stand a

---

[4] Under the current regulations, which apply to claims filed on or after March 17, 2017, an ALJ weighs both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. *See* 20 C.F.R. § 404.1520b.  Because plaintiff filed her claim in 2014, the "treating physician rule" still applies.

8

total of one hour, and walk a total of one hour. As for the remaining two hours not accounted for by sitting, standing, and walking, the doctor offered that time would be consumed by frequent position changes and lying down because of pain (Ex B17F).

Dr. Edgar went on to opine the claimant could occasionally handle, finger, feel, reach overhead, and push/pull with both upper extremities, but never use foot controls. She could occasionally balance, stoop, kneel, and climb ramps and stairs, but never crouch, crawl, and climb ladders, ropes, or scaffolds. The doctor provided a number of occasional limitations related to environmental factors such as exposure to moving mechanical parts, operating a motor vehicle, pulmonary irritants, humidity and wetness, extreme temperatures, and vibration. Yet the claimant could have no exposure to unprotected heights. Dr. Edgar also stated the claimant could not walk over rough or uneven surfaces at a reasonable pace, but she did not need an assistive device for ambulation (Ex Bl7F). Finally, in a sworn statement, Dr. Edgar concurred with the attorney's statement that the claimant was going to testify to having to lie down periodically during the day for improvement of her symptoms (Ex B18F/4).

I give the opinion of Dr. Edgar partial weight. The limitations expressed related to no climbing ladders, ropes, or scaffolds, no exposure to unprotected heights, and occasional exposure to vibration and extreme cold are consistent with her medical diagnoses and the medical evidence. Moreover, the overall indication the claimant was limited to the sedentary exertional level is generally consistent with the opinion of Dr. Brophy and the medical evidence. The claimant was observed with a normal gait and normal muscle strength on many occasions, which also supported Dr. Edgar's opinion that no assistive device was necessary.

However, there is an inconsistency in the doctor's opinion in that he indicated the claimant could never use foot pedals, but then went on to state she could occasionally operate a motor vehicle. In addition, the claimant does not have upper extremity findings that would necessitate the limitations on handling, fingering, and feeling as described by the doctor. Overall, the medical evidence showed ongoing neck and low back problems along with some hip and ankle problems, which support some functional limitations. Considering the negative EMG results and normal or near normal strength, reflexes, and sensation findings on most examinations, even with the more recent mentions of positive straight leg raising on the left and the reduced cervical and lumbar range of motion documented in the record, a limitation to the sedentary exertional level is supported.

Despite this, the limitation to only being able to sit, stand, and walk for a total of six hours in an eight-hour workday as described by Dr. Edgar not supported by the objective record through the date last insured. Her reports of having to lie down during the day or otherwise being unable to stay in one position, such as those she described in her testimony, are also unsupported by the objective record given the negative EMG and inconsistent examination results. Finally, the sworn

9

>statement specifically referred to discussions and examination findings occurring after the date last insured.

PageID.47-48.

### 2. Dr. Edgar's March 28, 2018 opinions were relevant, at least in part, to plaintiff's condition as it existed prior to her date last insured

ALJ Grit found that Dr. Edgar's opinions were not supported by the medical evidence because the doctor's sworn statement specifically referred to discussions and examination findings which occurred after plaintiff's date last insured. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). Since plaintiff's insured status for purposes of receiving DIB expired on December 31, 2017, plaintiff cannot be found disabled unless she can establish that a disability existed on or before that date. *See id*. "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Security Administration*, 88 Fed. Appx. 841, 845 (6th Cir. 2004). "[P]ost-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date." *Grisier v. Commissioner of Social Security*, 721 Fed. Appx. 473, 477 (6th Cir. 2018).

As an initial matter, ALJ Grit did not identify the "discussions and examination findings occurring after the date last insured" upon which Dr. Edgar relied. It is undisputed that Dr. Edgar gave these opinions after plaintiff's date last insured of December 31, 2017. The record reflects that Dr. Edgar's written opinion is March 28, 2018, and that the doctor gave his sworn statement on that date. PageID.764-776. However, it appears that at least some of the Dr.'s opinions related to plaintiff's condition as it existed on or before the date last insured. Dr. Edgar's opinions are based upon "MRI" and "treatment notes" (PageID.767). The MRIs were from May 2017. PageID.583-585. Dr. Edgar generated treatment notes on September 6, 2017, which

referenced the MRIs, plaintiff's conditions (degenerative lumbar spinal stenosis, spinal stenosis in the cervical region, cervical neuropathy, and lumbar radiculopathy), and treatment options which included surgery. PageID.682-687. The record reflects that Dr. Edgar evaluated plaintiff's condition on February 14, 2018, at which time he reviewed the MRIs, plaintiff's condition and surgical options. PageID.757-762. These later treatment notes contain similar findings. There is no documentation which indicates that plaintiff's condition had deteriorated between September 6, 2017 and February 14, 2018. Given that Dr. Edgar's opinions expressed in February and March 2018 were based upon plaintiff's condition as it appeared in the May 2017 MRIs and the September 2017 treatment notes, his opinions appear relevant and useful to illuminate plaintiff's condition as it existed before the insurance cutoff date of December 31, 2017. *See Grisier*, 721 Fed. Appx. at 477. Based on this record, the ALJ should not have summarily rejected Dr. Edgar's March 2018 opinions as irrelevant to plaintiff's claim.

### 2. ALJ Grit's evaluation of the EMG results

By way of background, on January 4, 2016, Dr. Edgar noted that plaintiff had not had EMGs in the neck, arms, legs, or back, and that he would like to get an EMG of her left arm and leg. PageID.587, 590. It appears that she had the EMG with Dr. Gurden on February 3, 2016. PageID.558. On February 22, 2016, Dr. Edgar stated that "[plaintiff's] EMG was negative for radiculopathy for both the arm and leg on the left." PageID.593. As discussed, in March 2018, Dr. Edgar opined that plaintiff required frequent position changes and "[l]aying down due to pain" during an eight-hour workday (PageID.765). In her decision, ALJ Grit found that these restrictions were unsupported by the objective record given the negative EMG and inconsistent examination results. PageID.48. Plaintiff contends that the ALJ made an improper medical judgment in interpreting her EMG results.

11

"[T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir. 2013). However, ALJs are not physicians. "In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). "The Commissioner's determination must be based on testimony and medical evidence in the record." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996). In this regard, "the ALJ may not substitute her own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006).

Here, ALJ Grit referred to "the negative EMG" as a specific reason to reject Dr. Edgar's opinion regarding plaintiff's need to lie down and change positions. However, she did not cite a physician's opinion regarding the relevance of the EMG results to plaintiff's physical limitations. Under these circumstances, the Court concludes that ALJ Grit improperly interpreted the EMG results in functional terms.

ALJ Grit's decision did not articulate good reasons for rejecting Dr. Edgar's opinions given on March 28, 2018. Accordingly, the decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Edgar's opinions set forth in the medical source statement (PageID.764-769) and the transcribed statement (PageID.770-776).

### IV.   CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the

Commissioner is directed to re-evaluate Dr. Edgar's opinions set forth in the medical source statement (PageID.764-769) and the transcribed statement (PageID.770-776). A judgment consistent with this opinion will be issued forthwith.

Dated: September 21, 2020  /s/ Ray Kent
United States Magistrate Judge